UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

NICOLE D. MARQUEZ,               )      NO. EDCV 08-0234-CT
                                 )
          Plaintiff,             )      OPINION AND ORDER
                                 )
     v.                          )
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of                  )
Social Security,                 )
                                 )
                                 )
          Defendant.             )
_____)

     For the reasons set forth below, it is ordered that judgment be
entered in favor of defendant Commissioner of Social Security ("the
Commissioner") because the Commissioner's decision is supported by
substantial evidence and is free from material legal error.


                      SUMMARY OF PROCEEDINGS

     On February 21, 2008, plaintiff, Nicole D. Marquez, ("plaintiff"),
filed a complaint seeking judicial review of the denial of benefits by
the Commissioner pursuant to the Social Security Act ("the Act").  The
parties filed a consent to proceed before the magistrate judge.  On June

1  27, 2008, plaintiff filed a brief in support of the complaint.  On July

2  28, 2008, the Commissioner  filed a response brief.

3  SUMMARY OF ADMINISTRATIVE RECORD

4  1.  Proceedings

5  On  November  23,  2004,  plaintiff  filed  an  application  for

6  Supplemental Security Income ("SSI"), alleging disability since April 1,

7  1991 due to mental retardation and Tourette's syndrome.  (TR 79, 83).[1]

8  The application was denied initially and upon reconsideration.  (TR 64-

9  68, 71-75).

10  On May 10, 2005, plaintiff filed a request for a hearing before an

11  administrative law judge ("ALJ").  (TR 58).  On May 21, 2007, plaintiff,

12  represented by an attorney, appeared and testified before an ALJ.  (TR

13  270-315). The ALJ also considered vocational expert ("VE") and medical

14  expert ("ME") testimony.  On August 14, 2007, the ALJ issued a decision

15  that plaintiff was not disabled, as defined by the Act, and thus was not

16  eligible for benefits.  (TR 14-20).  On September 14, 2007, plaintiff

17  filed a request with the Social Security Appeals Council to review the

18  ALJ's decision.  (TR 10).  On November 29, 2007, the request was denied.

19  (TR 4-6).  Accordingly, the ALJ's decision stands as the final decision

20  of the Commissioner.  Plaintiff subsequently sought judicial review in

21  this court.

22  2.  Summary Of The Evidence

23  The ALJ's decision is attached as an exhibit to this opinion and

24  order and materially summarizes the evidence in the case.

25

26  [1]  "TR" refers to the transcript of the record of
27  administrative proceedings in this case and will be followed by
   the relevant page number(s) of the transcript.

28  2

1

PLAINTIFF'S CONTENTIONS

2     Plaintiff contends as:

3  1.  Plaintiff's impairments, either singly or in combination, meet

4      and/or equal a listed impairment; and,

5  2.  The ALJ improperly assessed plaintiff's Residual Functional

6      Capacity because the ALJ erred in rejecting plaintiff's subjective

7      complaints.

8

STANDARD OF REVIEW

9     Under 42 U.S.C. §405(g), this court reviews the Commissioner's

10 decision to determine if: (1) the Commissioner's findings are supported

11 by substantial evidence; and, (2) the Commissioner used proper legal

12 standards.  Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996).

13 Substantial evidence means "more than a mere scintilla," Richardson v.

14 Perales, 402 U.S. 389, 401 (1971), but less than a preponderance.

15 Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

16     When the evidence can reasonably support either affirming or

17 reversing the Commissioner's conclusion, however, the Court may not

18 substitute its judgment for that of the Commissioner.  Flaten v.

19 Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir.

20 1995).   The court has the authority to affirm, modify, or reverse the

21 Commissioner's decision "with or without remanding the cause for

22 rehearing."  42 U.S.C. §405(g).  Remand is appropriate where additional

23 proceedings would remedy defects in the Commissioner's decision.

24 McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

25

DISCUSSION

26     1.  The Sequential Evaluation

27     A person is "disabled" for the purpose of receiving social security

28

3

benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled.  First, it is determined whether the person is engaged in "substantial gainful activity."  If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments.  If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work.  If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work.  The person is entitled to benefits only if the person is unable to perform other work. 20 C.F.R. §§404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

4

1    2.   <u>Issues</u>

2         A.   <u>Prior Finding of Disability</u>

3         Plaintiff previously was awarded Social Security benefits in April

4    1991 based on a finding of childhood mental retardation.   (Defendant's

5    Brief at 1, n.2.)   Those benefits were suspended pursuant to 42 U.S.C.

6    § 402(x)(1)(a)  upon  plaintiff's  incarceration  with  the  California

7    Department  of  Corrections.    (Defendant's  Brief  at  1.)    Because

8    plaintiff's benefits remained suspended for more than 12 months while

9    she was incarcerated, her benefits were ultimately terminated pursuant

10   to 20 C.F.R. § 416.1335.   (Defendant's Brief at 1.)   As discussed below,

11   plaintiff's previous award of benefits does not establish that she is

12   currently disabled within the meaning of the Act.

13        "A claimant who[se benefits have been] terminated for non-medical

14   reasons and at some later date submits an initial application for

15   benefits must establish that he or she satisfies all the requirements,

16   including medical disability, of the Act.   <u>Warren v. Bowen</u>, 804 F.2d

17   1120, 1121 (9th Cir. 1986), <u>as amended</u>, 817 F.2d 63 (9th Cir. 1987).

18   Thus, under <u>Warren</u>, a claimant is not entitled to a presumption of

19   continuing disability when benefits are terminated for a non-medical

20   reason.   <u>Id.</u>

21        Plaintiff's benefits were terminated pursuant to statute as a

22   result of her incarceration.   Since her benefits were terminated for a

23   non-medical reason, she is not entitled to a presumption of disability

24   based on her previous award of benefits as a child.   Rather, she must

25   now "establish that [] she satisfies all the requirements, including

26   medical disability, of the Act."   <u>Id.</u>

27        B.   <u>Plaintiff's Impairments</u>

28                                        5

1    Plaintiff contends that the ALJ erred in concluding that
2    plaintiff's impairments, either singly or in combination, do not meet
3    the requirements for a finding of mental retardation under Listing 12.05
4    of 20 C.F.R. part 404, subpart T, Appendix I (20 CFR 416.920(d), 416.925
5    and 416.926). Specifically, plaintiff argues that the ALJ erred in
6    rejecting the results of the IQ test administered to plaintiff by the
7    examining psychologist, which would have satisfied "paragraph C" of
8    Listing 12.05.

9        If the ALJ concludes at step two of the sequential evaluation that
10   the plaintiff's impairments are "severe" within the meaning of the Act,
11   the ALJ proceeds to step three of the sequential evaluation to compare
12   the plaintiff's impairments to the impairments listed in the "Listing of
13   Impairments" set forth in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1. See
14   20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d). If any
15   "severe" impairment, or combination of "severe" impairments, meets or
16   equals a listed impairment, the plaintiff is deemed disabled. Id.

17       The plaintiff's impairments need not precisely meet the criteria of
18   the Listing in order to obtain benefits. If the plaintiff's impairment
19   or combination of impairments is medically equivalent to one in the
20   Listing, disability is presumed and benefits are awarded. 20 C.F.R. §§
21   404.1520(d), 416.926(d); Barker v. Secretary of Health and Human Servs.,
22   882 F.2d 1474, 1477 (9th Cir. 1989). Medical equivalence will be found
23   if the medical findings are at least equal in severity and duration to
24   the listed findings. Marcia v. Sullivan, 900 F.2d 172, 175 (9th Cir.
25   1990). To determine medical equivalence, the Commissioner compares the
26   findings concerning the alleged impairment with the medical criteria of
27   the listed impairment. 20 C.F.R. §§ 404.1526(b), 416.926(b).

28                                          6

At step two of the sequential evaluation, the ALJ concluded that plaintiff suffered from Tourette's syndrome and depression, both of which constitute severe impairments as that term is defined under the Act. The ALJ ultimately concluded, however, that these impairments, either singly or in combination, did not meet or medically equal Listings 12.04, 12.05, 12.09, or 12.10. The ALJ concluded that plaintiff did not meet the "paragraph C" criteria of Listing 12.05 because she did not have a valid verbal, performance, or full scale IQ of 60 through 70. (TR 17.) This finding is supported by substantial evidence.

Paragraph C of Listing 12.05 requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function."

During a 2005 consultative psychological evaluation, plaintiff achieved a verbal IQ of 68, a performance IQ of 63, and a full scale IQ of 63. However, the consultative psychologist concluded that the test results were invalid due to plaintiff's poor effort. (TR 189.) During plaintiff's 2006 consultative psychological evaluation, plaintiff's IQ test was aborted by the consultative psychologist "due to [plaintiff's] uncooperative stance." (TR 213.)

The reports, analysis, and opinions of consultative physicians called in by the ALJ may serve as substantial evidence. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Where the consulting physician's opinion is corroborated by the opinions of other examining and consulting physicians, which in turn are based on independent clinical findings, the ALJ's primary reliance on the findings of the

1  consulting physician does not constitute an abuse of discretion.  <u>Saelee</u>
2  <u>v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996) (citing <u>Andrews</u>, 53 F.3d at
3  1041); <u>see also</u> <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148-49 (9th Cir.
4  2001).

5         Here, the original consultative psychologist, based on her
6  independent evaluation, concluded that the results of plaintiff's IQ
7  test were invalid due to plaintiff's poor effort.  These findings were
8  corroborated by the second consultative psychologist who also made
9  independent findings of plaintiff's poor effort on the subsequent IQ
10  test.  Plaintiff did not submit any other evidence of a valid IQ test
11  within the range specified in paragraph C of Listing 12.05.  Neither did
12  plaintiff submit any other evidence indicating that she currently
13  functions at a materially impaired level of intelligence,  so as to
14  prove her symptoms equal the criteria of Listing 12.05.  In fact, other
15  evidence of record suggests that plaintiff maintains an average level of
16  intelligence.   (TR 144, 145.)   Thus, the findings of both of the
17  consultative psychologists constitutes substantial evidence for the
18  ALJ's conclusion that plaintiff did not meet the "paragraph C" criteria
19  of Listing 12.05.

20         Accordingly, the ALJ did not err in concluding that plaintiff did
21  not meet the criteria for a finding of disability under Listing
22  12.05(c).

23              C.    <u>Plaintiff's RFC</u>

24         Plaintiff contends that the ALJ improperly assessed her Residual
25  Functional Capacity (RFC).  She alleges that the ALJ erred in rejecting
26  her subjective complaints of impairment and thus failed to properly
27  assess the impact of her Tourette's syndrome on her ability to sustain

28                                      8

1  activity.

2              i.   Credibility Determination

3       The ALJ found that plaintiff's subjective complaints concerning the

4  intensity, persistence, and limiting effects of her symptoms were not

5  entirely credible.   (TR 18.)   The ALJ based this conclusion on the

6  findings of the consultative psychologists that plaintiff had not put

7  forth good effort on testing and that plaintiff appeared to be

8  simulating her symptoms.   The ALJ noted that at some points throughout

9  the record plaintiff exhibited no tics and that during plaintiff's

10  hearing there appeared to be "an obvious volitional component to her

11  'barking.'"   The ALJ further explained that plaintiff's performance on

12  the Test of Memory Malingering indicated she was attempting to simulate

13  cognitive impairment, a result which led the consultative psychologist

14  to conclude that plaintiff was malingering.   (TR 18-19.)

15       The ALJ did not err in rejecting plaintiff's subjective complaints

16  of impairment.   Where a plaintiff has produced objective medical

17  evidence of impairments and shows that the impairments could reasonably

18  be expected to produce some degree of the alleged symptoms, the ALJ may

19  reject the plaintiff's testimony only upon (1) finding evidence of

20  malingering, or (2) expressing clear and convincing reasons for doing

21  so.  Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  The ALJ's

22  assessment of plaintiff's credibility should be given great weight.

23  Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985.)  Although the ALJ's

24  interpretation of plaintiff's testimony may not be the only reasonable

25  one, if it is supported by substantial evidence "it is not [the court's]

26  role to second-guess it."   Rollins v. Massanari, 261 F.3d 853, 857 (9th

27  Cir. 2001) (citing Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)).

28                              9

1    The ALJ rejected plaintiff's credibility based, in part, on
2  evidence that plaintiff was malingering.  There is substantial evidence
3  in the record to support the ALJ's conclusion that plaintiff was
4  malingering.  Plaintiff's 2006 consultative psychological examination
5  resulted in an Axis I diagnosis of malingering based on plaintiff's
6  performance on the Test of Memory Malingering, the examiner's
7  observations of plaintiff's volitional effort to present herself as
8  severely impaired, and plaintiff's apparent attempts to simulate
9  cognitive impairment.  (TR 213-14.)  These findings are consistent with
10 plaintiff's 2005 consultative evaluation, in which the examiner
11 concluded that the results of the psychological tests administered to
12 plaintiff were invalid due to plaintiff's poor effort.  (TR 188-89.)
13 Moreover, medical records from the California Department of Corrections
14 indicate that plaintiff's condition was stable and that her alleged
15 symptoms were the result of malingering.  (TR 148, 149, 150, 154, 155,
16 158, 160, 161, 233, 249.)

17    The ALJ's finding of malingering, which was based on substantial
18 evidence in the record, was sufficient to support the ALJ's rejection of
19 plaintiff's subjective complaints of impairment.  Benton, 331 F.3d at
20 1040.

21            ii.  RFC Assessment

22    If plaintiff has a severe impairment that does not meet or equal
23 the Listings, the Commissioner or ALJ will review plaintiff's RFC.  20
24 C.F.R. § 404.1520(e).  The court will affirm the ALJ's determination of
25 the plaintiff's RFC if the ALJ applied the proper legal standard and his
26 decision is supported by substantial evidence.  Bayliss v. Barnhart, 427
27 F.3d 1211, 1217 (9th Cir. 2005).  In making his RFC determination, the

28                                    10

1  ALJ may properly take into account those limitations for which there is

2  record support and that did not depend on the plaintiff's testimony

3  where the ALJ properly found plaintiff's testimony not credible.   Id.

4      Here, the ALJ assessed plaintiff's RFC as follows:

5      [Plaintiff] has the residual functional capacity to perform a
       full range of work at all exertional levels but with the
6      following nonexertional limitations: simple, repetitive non-
       public work with things rather than people.  She is precluded
7      from handling cash or any access to drugs or alcohol, no
       security work, and no intense interpersonal interaction with
8      others.  She should not operate motorized vehicles and should
       not perform any fast paced production work.

9

10  (TR 17.)   The ALJ based this RFC assessment on the evidence of

11  plaintiff's functional capacity remaining after the exclusion of

12  plaintiff's subjective complaints.

13      A January 19, 2005 Residual Functional Capacity Assessment by

14  psychiatrist M. Becraft, M.D. resulted in findings that plaintiff

15  suffered only mild limitations in activities of daily living and

16  maintaining social functioning, and moderate limitations in

17  maintaining concentration, persistence, or pace.  (TR 207.)   Dr.

18  Becraft further concluded that plaintiff exhibited mild limitations in

19  her ability to work in coordination with or proximity to others

20  without being distracted by them, and moderate limitations in her

21  ability to understand and remember detailed instructions, her ability

22  to carry out detailed instructions, and her ability to maintain

23  attention and concentration for extended periods.  (TR 193.)   Dr.

24  Becraft found that plaintiff did not have any other significant

25  impairments.

26      Following a January 4, 2005 psychological evaluation of

27  plaintiff, consultative psychologist Rosa Colonna, Ph.D., concluded

28

11

1  that plaintiff maintained the ability to understand, remember, and

2  carry out short and simplistic instructions without difficulty, and

3  make simplistic work related decisions without special supervision.

4  (TR 190.)  Dr. Colonna further concluded that plaintiff presented with

5  a moderate inability to understand, remember, and carry out detailed

6  instructions and a mild inability to interact appropriately with

7  supervisors, coworkers, and peers.  (TR 190.)

8      Psychologist Kim Goldman, Ph.D. was unable to accurately assess

9  plaintiff's functional limitations due to malingering.  (TR 214.)

10      Significantly, throughout plaintiff's incarceration with the

11  California Department of Corrections, she exhibited few signs of

12  Tourette's and her level of functioning remained within normal limits.

13  (TR 148, 149, 150, 154, 155, 158, 160, 161, 223, 249.)

14      The ALJ's RFC assessment is consistent with each of the

15  assessments discussed above.  Specifically, the ALJ's assessment

16  conforms to the findings of Dr. Becraft and Dr. Colonna.  The

17  assessments by these doctors constitute substantial evidence

18  supporting the ALJ's RFC assessment because they are consistent with

19  all the other relevant evidence of record.  See Saelee v. Chater, 94

20  F.3d at 522.

21                    CONCLUSION

22      Plaintiff clearly has severe impairments.  A plaintiff who can

23  still perform work in the national economy, even with a severe

24  impairment, is not disabled as that term is defined by the Act.  See

25  generally Baxter v. Sullivan, 923 F.2d 1391, 1395 (9th Cir. 1991).

26  Furthermore, if the evidence can reasonably support either affirming

27  or reversing the Commissioner's conclusion, the court may not

28                        12

1   substitute its judgment for that of the Commissioner.  <u>Flaten v.</u>

2   <u>Secretary of Health and Human Services</u>, 44 F.3d at 1457.

3       After careful consideration of the record as a whole, the

4   magistrate judge concludes that the Commissioner's decision is

5   supported by substantial evidence and is free from material legal

6   error.  Accordingly, it is ordered that judgment be entered in favor

7   of the Commissioner.

8

9   DATED: *Aug. 6, 2008*

10

11      CAROLYN TURCHIN
        UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        13